### 271. ATLANTA ICE AND COAL COMPANY v. BARNES.

HILL, C. J. The declaration as amended sets forth a cause of action, and the judgment overruling the demurrers, general and special, is
        *Affirmed.*

Action for damages, from city court of Atlanta—Judge Reid. September 8, 1906.

Submitted April 8,—Decided April 25, 1907.

*Payne, Jones & Jones,* for plaintiff in error.

*Westmoreland Brothers, Henderson Hallman,* contra.

The widow of Neal Barnes sued the defendant corporation for

damages resulting from his homicide, alleging as follows: On May 20, 1903, Barnes was in the defendant's employment as a laborer in the running of engines and boilers used in the manufacture of ice. Under and connected with the boilers was a large iron or steel cylinder known as a mud drum, used as a receptacle for the mud as it would settle from the water in the boiler. The temperature in the drum was the same as that in the boiler; it was necessary at intervals to open cocks connected with the drum to allow the mud to escape; and the defendant had provided a brick cemented cistern of sufficient capacity to hold the mud discharged, but of insufficient strength to sustain the pressure put on it in allowing the mud and steam to escape therein. Barnes was ordered by the engineer to open the cock and allow the steam, water, and mud to pass from the drum into the cistern, which he did; but the cistern, by reason of its faulty construction and insufficient strength to sustain the pressure, gave way, exploded, and blew out, throwing the mud and steam over the body of Barnes, burning and scalding him, he being unable to escape from the engine-room; from which injuries he died in two days. His death was caused by the negligence of the defendant in providing an unsafe and insecure cistern; and defendant knew or ought to have known that the same was dangerous to any servant using it for the purpose for which it was prepared. Barnes had no knowledge of its dangerous condition or its defective construction, nor could he by the exercise of ordinary diligence have known of its imperfect condition or of the danger in working in proximity to it. His age and earning capacity are alleged. The cistern was constructed as follows: it was round, something like an ordinary well, and was built of brick with a very light coat of cement on the outside, the walls being only the width of one brick in thickness; it was about two and a half feet in diameter; it extended about four feet under ground and about one and a half feet above ground; a cast-iron cap was laid on its top and cemented, with no other fastening or anything to secure it; extending up from the top of it was a pipe about one and a half inches in diameter, to allow the steam to escape; and from the side of it was a small drain-pipe that allowed some of the steam to escape into a sewer. Into this cistern were discharged the steam and mud from the drum, which were at the same pressure as that of

the steam in the boiler—about 150 pounds per square inch. The walls of the cistern were too thin to retain this pressure injected into it, and the two escape-pipes were too small to allow sufficient steam to escape to relieve the pressure, and the cap was too in-securely fastened to prevent its flying off when steam was injected into the cistern; and the cap did blow off and the walls broke and threw the hot water, steam, and mud all over Barnes and scalded him.

The defendant excepts to the overruling of its general and special demurrers. The grounds of special demurrer were that there were no sufficient allegations of negligence and of dangerous condition and unsafe and defective construction of the cistern.